**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WILLIS BEAL,** | : | |
| | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | **Case No.:**  2:25-cv-1568 |
| | : | |
| **FET-FISK, LTD and NIKLAS** | : | |
| **FORSBERG,** *jointly and severally*, | : | |
| | : | |
| *Defendants*. | : | **JURY TRIAL DEMANDED.** |

**COMPLAINT IN CIVIL ACTION**

AND NOW, comes Plaintiff, Willis Beal, by and through the undersigned counsel, J.P. Ward & Associates, LLC, and, specifically, Justin M. Bahorich, Esquire, who files the within Complaint against Defendants, Fet-Fisk, LTD and Niklas Forsberg, jointly and severally, of which the following is a statement:

**PARTIES**

1.    Plaintiff, Willis Beal (hereinafter "Mr. Beal" or "Plaintiff"), is an adult individual who currently resides in Allegheny County, Pennsylvania.

2.    Defendant, Fet-Fisk, LTD (hereinafter "Fet-Fisk" or "Defendant"), is a limited liability company with a principal address located as 4786 Liberty Avenue, Pittsburgh, PA 15224.

3.    Defendant, Niklas Forsberg (hereinafter "Mr. Forsberg"), is an adult individual who, upon information and belief, currently resides at 206 Stratford Avenue, Apt. 5, Pittsburgh, PA 15206.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper as Mr. Beal brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000e *et seq*.), the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), and the Pennsylvania Human Relations Act ("PHRA" – 43 P.S. §§ 951-963).

5.      Venue is proper in the Western District of Pennsylvania under 28 U.S.C. § 1391(b) in that this is the district in which the claims arose.

6.      On September 26, 2024, Mr. Beal timely dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC").

7.      On July 17, 2025, the EEOC issued a Notice of Right to Sue.

8.      On September 9, 2025, Mr. Beal received his closure letter from the PHRC related to his dual-filed Charge of Discrimination specifically under PHRC Case No. 202402651.

9.      Mr. Beal has exhausted all his administrative remedies under Title VII and the PHRA.

## FACTUAL ALLEGATIONS

10.      In or around February 2024, Mr. Beal began his employment with Fet-Fisk in the position of Dish Washer.

11.      At all times relevant, Mr. Beal is a member of a protected class as a Black male, and he performed the essential functions of his job duties well.

### a.  Early Complaints and Mr. Forsberg's Dismissive Conduct

12.      Shortly after he began working, Mr. Beal observed that Mr. Forsberg monitored his work more closely than that of other employees and spoke to him in a demeaning manner.

2

13.     Mr. Beal believed that this disparate treatment was because of his race and that similarly situated white employees were treated with more respect.

14.     In or around early March 2024, Mr. Beal engaged in protected activity when he informed Mr. Forsberg that he felt Mr. Forsberg was micromanaging him because of his race.

15.     After this complaint, Mr. Forsberg did not document the incident or bring it to the attention of General Manager Heather Perkins ("Ms. Perkins") or Human Resources Representative Greg Austin ("Mr. Austin"), in violation of Fet-Fisk's written Anti-Harassment Policy.

16.     In or around mid-March 2024, Mr. Beal again engaged in protected activity by telling Mr. Forsberg: "You have some racial blind spots. Some of the things you say are offensive, and you just don't seem to get that."

17.     Mr. Forsberg responded by saying, "You don't understand hierarchy," and called Mr. Beal "combative."

18.     Mr. Beal told Mr. Forsberg that the characterization was offensive and inappropriate.

19.     Mr. Forsberg ignored Mr. Beal's concern and again failed to report or escalate the complaint as required under Fet-Fisk's internal policies.

**b.   Continuing Complaints and Mr. Forsberg's Pattern of Disregard**

20.     In a third complaint later that month, Mr. Beal told Mr. Forsberg that he felt he was being highly scrutinized and treated differently from his similarly situated white coworkers.

21.     In response, Mr. Forsberg called Mr. Beal into a meeting after the restaurant closed for the night.

22.    During this meeting, Mr. Forsberg told Mr. Beal that he was "not listening," that there were "common issues reoccurring," and that Mr. Forsberg was "the boss" and "in control."

23.    Mr. Forsberg again called Mr. Beal "combative" and stated that "people like you [Mr. Beal] make it hard to run a kitchen."

24.    Upon information and belief, these statements further illustrated Mr. Forsberg's reliance on racially stereotyped views of Black men as difficult or confrontational.

25.    Despite these repeated complaints, Mr. Forsberg again did not report or document any of them and did not bring them to the attention of Mr. Austin or Ms. Perkins.

26.    At no point did Fet-Fisk initiate an investigation or implement any corrective process as required under its Anti-Harassment and Anti-Retaliation policies.

27.    By failing to follow these mandatory procedures, Mr. Forsberg and Fet-Fisk disregarded Mr. Beal's protected activity and enabled continued discriminatory conduct.

### c.  **Mr. Beal's Final Instance of Protected Activity**

28.    On or about March 29, 2024, Mr. Forsberg spoke to Mr. Beal about allegedly failing to announce himself while moving through the kitchen.

29.    Upon information and belief, similarly situated white employees were not singled out or disciplined for failing to do the same.

30.    In response, Mr. Beal said in a light and self-deprecating tone, "Black man moving," to acknowledge the instruction and defuse tension.

31.    Upon hearing this, Mr. Forsberg reacted angrily and said, "Are you kidding me?"

32.    Mr. Forsberg refused to speak to Mr. Beal for the remainder of the shift.

33.    Mr. Beal understood Mr. Forsberg's reaction as further evidence of resentment toward his prior protected complaints and opposition to discriminatory treatment.

### d. **Mr. Beal's Retaliatory Termination**

34.    On or about March 30, 2024, less than twenty-four (24) hours after the "Black man moving" incident, Mr. Forsberg terminated Mr. Beal's employment.

35.    Mr. Forsberg told Mr. Beal that he was "too combative," "not adhering to hierarchy," and "unable to communicate."

36.    These reasons mirrored the same racially coded language Mr. Forsberg had used previously in response to Mr. Beal's multiple protected complaints of racial discrimination.

37.    Mr. Forsberg provided no written warnings, disciplinary documentation, or performance evaluations supporting the termination.

38.    Mr. Beal's termination occurred immediately after his protected activity, creating a clear temporal connection between his complaints and the adverse action.

39.    Upon information and belied, Mr. Forsberg's decision to terminate Mr. Beal was motivated by retaliatory and discriminatory intent.

**COUNT I**
**DISCRIMINATION ON THE BASIS OF RACE**
**IN VIOLATION OF TITLE VII**
**(*Plaintiff v. Defendant Fet-Fisk*)**

40.    Mr. Beal incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

41.    Under Title VII, it is illegal for an employer to "fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. §2000e-2(a)(1).

42.    When analyzing a claim of discrimination under Title VII, a plaintiff must show: "(1) he is a member of a protected class; (2) he was qualified for the position he sought to attain

or retain; (3) he suffered an adverse employment action; and (4) either similarly-situated non-members of the protected class were treated more favorably or the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Langley v. Merck & Co.*, 186 Fed Appx. 258 (3d Cir. 2006) (citing *McDonnell Douglas Corp. v. Green*, 36 L. E.D. 29 668 (1973). See also *Makky v. Chertoff*, 542 F.3d 205, 214 (3d Cir. 2008).

43.     Pennsylvania courts have determined that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. SEPTA*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)).

44.     In *Muldrow v. City of St. Louis*, the United States Supreme Court held that a Plaintiff claiming discrimination can establish an adverse employment action through evidence of "*some injury* respecting his employment terms or conditions" and that the injury "left him worse off, but need not have left him *significantly so*." 601 U.S. 346, 359 (2024) (emphasis added).

45.     Under Title VII, for other employees to be considered "similarly situated," they must have "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Morales v. PNC Bank, N.A.*, 2012 U.S. Dist. LEXIS 143605 *23 (E.D. Pa. 2012).

46.     Pennsylvania courts have held that comparison factors for "similarly situated employees" have included "dealing with the same supervisor, having been subject to the same standards, and engaging in the same conduct without differentiating and mitigating circumstances." *Id.*

47.     Mr. Beal is a Black man and therefore a member of a protected class under Title VII.

6

48.    Mr. Beal was qualified for his position as a Dishwasher and performed his job duties competently and professionally throughout his employment.

49.    During his employment, Mr. Beal was subjected to race-based differential treatment by Mr. Forsberg, including excessive scrutiny, demeaning criticism, and the use of racially coded language portraying him as "combative" and unable to "understand hierarchy."

50.    Mr. Beal repeatedly engaged in protected activity by informing Mr. Forsberg that he believed he was being treated differently because of his race.

51.    Rather than addressing Mr. Beal's complaints or reporting them to HR as required by Fet-Fisk's policies, Mr. Forsberg ignored the complaints and continued to rely on racially stereotyped characterizations of Mr. Beal.

52.    On March 30, 2024, less than twenty-four (24) hours after Mr. Beal's final protected complaint, Mr. Forsberg terminated Mr. Beal's employment, citing the same racially coded reasons previously used in response to Mr. Beal's race complaints.

53.    Similarly situated white employees were not subjected to the same scrutiny, discipline, or termination for comparable workplace conduct.

54.    These actions occurred under circumstances giving rise to a strong inference of intentional racial discrimination.

55.    Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

56.    As a direct and proximate cause of the aforementioned conduct, Mr. Beal suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Willis Beal, hereby requests this Honorable Court consider the above and grant relief in his favor, and against Defendant, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**COUNT II**
**RETALIATION ON THE BASIS OF RACE**
**IN VIOLATION OF TITLE VII**
**(*Plaintiff v. Defendant Fet-Fisk*)**

57.    Mr. Beal incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

58.    Title VII makes it unlawful for an employer to retaliate against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

59.    To establish a *prima facie* case of retaliation under Title VII, a plaintiff must provide evidence that: (1) he "engaged in activity protected by Title VII"; (2) the employer took an "adverse employment action" against him; and (3) there was a "causal connection" between his "participation in the protected activity and the adverse employment action." *Kengerski v. Allegheny Cty.*, 435 F. Supp. 3d 671, 676 (W.D. Pa. 2020) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 341-42 (3d Cir. 2006)).

60.    Mr. Beal engaged in protected activity on multiple occasions when he informed Mr. Forsberg that he believed he was being treated differently because of his race and that Mr. Forsberg's behavior towards him was discriminatory.

61.    Mr. Beal's protected complaints included statements to Mr. Forsberg that he was "micromanaging him because of his race" and that Mr. Forsberg had "racial blind spots" and made offensive comments.

62.    Rather than addressing or reporting Mr. Beal's concerns as required under Fet-Fisk's Anti-Harassment Policy, Mr. Forsberg ignored the complaints and continued to rely on racially stereotyped descriptions of Mr. Beal, calling him "combative" and saying he did not "understand hierarchy."

63.    On March 30, 2024, less than twenty-four (24) hours after Mr. Beal's final protected complaint, Mr. Forsberg terminated Mr. Beal's employment, citing the same racially coded reasons he had previously used in response to Mr. Beal's race complaints.

64.    The temporal proximity between Mr. Beal's protected activity and his termination, combined with Mr. Forsberg's reliance on racially charged language and his failure to report or escalate Mr. Beal's complaints to management, supports a strong inference of retaliatory intent.

65.    Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

66.    As a direct and proximate cause of the aforementioned conduct, Mr. Beal suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Willis Beal, hereby requests this Honorable Court consider the above and grant relief in his favor, and against Defendant, including, back pay, front pay, compensatory damages, punitive damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

## <u>COUNT III</u>
## DISCRIMINATION ON THE BASIS OF RACE
## IN VIOLATION OF SECTION 1981
## (*Plaintiff v. All Defendants*)

67.    Mr. Beal incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

68.    42 U.S.C. § 1981(a) provides that:

> "[a]ll persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws …as is enjoyed by white citizens."

*Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 460 (1975) (holding that Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race."); *see also*, *Comcast Corp. v. Natl. Assn. of African Am.-Owned Media*, 140 S. Ct. 1009, 1010 (2020).

69.    Thus, Section 1981 prohibits employers from engaging in intentional racial discrimination.

70.    Mr. Beal is a Black male and therefore a member of a protected class under Section 1981.

71.    Mr. Beal was qualified for his position as a Dishwasher and performed his duties competently and professionally.

72.    During his employment, Mr. Beal was subjected to intentional racial discrimination by Mr. Forsberg, who treated him more harshly than white coworkers, scrutinized his work excessively, and referred to him using racially coded language such as "combative" and "not understanding hierarchy."

73.     Mr. Beal repeatedly engaged in protected activity by reporting this discriminatory treatment. Rather than escalating those complaints as required by policy, Mr. Forsberg ignored them and continued to rely on racial stereotypes.

74.     On March 30, 2024, less than twenty-four (24) hours after Mr. Beal's final protected complaint, Mr. Forsberg terminated his employment under pretextual reasons.

75.     Similarly situated white employees were not subjected to the same discipline or termination.

76.     Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

77.     As a direct and proximate cause of the aforementioned conduct, Mr. Beal suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Willis Beal, hereby requests this Honorable Court consider the above and grant relief in his favor and against All Defendants, jointly and severally, including an award of back pay, front pay, compensatory and punitive damages, costs and reasonable attorney's fees, in addition to any such other relief this Court deems just and proper.

**COUNT IV**
**RETALIATION ON THE BASIS OF RACE**
**IN VIOLATION OF SECTION 1981**
(***Plaintiff v. All Defendants***)

78.     Mr. Beal incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

79.     The Third Circuit has held that retaliation claims under § 1981 are controlled by the three-step burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Canada v. Samuel Grossi & Sons*, 49 F.4th 340 (3rd Cir.

2022)    (citing    *CBOCS West, Inc. v. Humphries*, 553 U.S. 442    (2008) (holding    that §

1981 "encompasses claims of retaliation")).

80.    Under the first step of that framework, a plaintiff "must establish a *prima facie* case

by showing '(1) [that he engaged in] protected employee activity; (2) adverse action by the

employer either after or contemporaneous with the employee's protected activity; and (3) a causal

connection between the employee's protected activity and the employer's adverse action.'" *Daniels*

*v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (alteration in original) (quoting *Marra v.*

*Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)).

81.    Upon making these showings, the employer then, under step two, has the burden of

producing evidence that "present[s] a legitimate, non-retaliatory reason for having taken the

adverse action." *Daniels*, 776 F.3d at 193.  If the employer meets this burden, the burden then

shifts "back to the plaintiff to demonstrate that 'the employer's proffered explanation was false,

and that retaliation was the real reason for the adverse employment action.'" Id. (quoting *Moore v.*

*Cty. of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006)).

82.    Mr. Beal engaged in protected activity under Section 1981 when he repeatedly

reported to Mr. Forsberg that he believed he was being treated differently because of his race and

that Mr. Forsberg's conduct toward him was discriminatory.

83.    Mr. Beal's protected activity included complaints in which he told Mr. Forsberg

that he was being "micromanaged because of his race" and that Mr. Forsberg had "racial blind

spots" and made offensive comments.

84.    Mr. Forsberg did not escalate or document any of these complaints as required by

Fet-Fisk's Anti-Harassment and Anti-Retaliation policies and instead responded by labeling Mr.

Beal "combative," "difficult," and unable to "understand hierarchy," relying on racially coded stereotypes.

85.    On March 30, 2024, less than twenty-four (24) hours after Mr. Beal's final protected complaint, Mr. Forsberg terminated Mr. Beal's employment, citing the same racially stereotyped reasons he had used in response to Mr. Beal's prior complaints.

86.    The temporal proximity between Mr. Beal's protected activity and termination, combined with Mr. Forsberg's failure to follow company reporting procedures, supports a strong inference of causal connection and retaliatory motive.

87.    Defendants' actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

88.    As a direct and proximate cause of the aforementioned conduct, Mr. Beal suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present, and future.

WHEREFORE, Plaintiff, Willis Beal, hereby requests this Honorable Court consider the above and grant relief in his favor and against All Defendants, jointly and severally, including an award of back pay, front pay, compensatory and punitive damages, costs and reasonable attorney's fees, in addition to any such other relief this Court deems just and proper.

## COUNT V
## DISCRIMINATION ON THE BASIS OF RACE
## IN VIOLATION OF THE PHRA
### (*Plaintiff v. All Defendants*)

89.    Mr. Beal incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

90.    The PHRA makes it an unlawful discriminatory practice "[f]or any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related

handicap or disability… to refuse to hire or employ or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment" 43 P.S. § 955(a).

91.     Pennsylvania courts have consistently held that the PHRA is interpreted coextensively with Title VII and Section 1981. *See Jones v. SEPTA*, 796 F.3d 323, 327 (3d Cir. 2015); *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1083–84 (3d Cir. 1995); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

92.     Accordingly, the same analytical framework and evidentiary standards that apply to discrimination claims under Title VII and Section 1981 likewise govern claims brought under the PHRA.

93.     For the reasons set forth in Counts I and III, Defendants' actions constitute unlawful discrimination on the basis of race in violation of the PHRA.

94.     As a direct and proximate result of the aforementioned conduct, Mr. Beal suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, humiliation, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Willis Beal, hereby requests this Honorable Court consider the above and grant relief in his favor, and against All Defendants, jointly and severally, including, back pay, front pay, compensatory damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

## COUNT VI
### RETALIATION ON THE BASIS OF RACE
### IN VIOLATION OF THE PHRA
#### (*Plaintiff v. All Defendants*)

95.     Mr. Beal incorporates the allegations contained in the paragraphs above as if fully set forth at length herein.

96.     The PHRA makes it an unlawful discriminatory practice "[f]or any person, employer, employment agency, or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act or because such individual has made a charge, testified, assisted or participated in any manner in any investigation, proceeding or hearing under this act" 43 P.S. § 955(d).

97.     Pennsylvania courts and the Third Circuit have held that retaliation claims under the PHRA are analyzed under the same framework as those brought pursuant to Title VII and Section 1981. *See Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002); *Jones v. SEPTA*, 796 F.3d 323, 327 (3d Cir. 2015); *Gomez v. Allegheny Health Servs., Inc.*, 71 F.3d 1079, 1084 (3d Cir. 1995); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996).

98.     Accordingly, the same analytical framework and evidentiary standards governing retaliation claims under Title VII and Section 1981 likewise apply to retaliation claims under the PHRA.

99.     For the reasons set forth in Counts II and IV, Defendants' conduct constitutes retaliation on the basis of race in violation of the PHRA.

100.    As a direct and proximate result of the aforementioned conduct, Mr. Beal suffered actual damages, including but not limited to, lost wages, emotional distress, anxiety, humiliation, and severe inconvenience, all in the past, present, and future.

WHEREFORE, Plaintiff, Willis Beal, hereby requests this Honorable Court consider the above and grant relief in his favor, and against All Defendants, jointly and severally, including,

back pay, front pay, compensatory damages, costs and reasonable attorneys' fees, in addition to any such other relief this Court deems just and proper.

**<u>JURY TRIAL DEMANDED.</u>**

Respectfully submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: October 9, 2025

By: <u>*/s/ Justin M. Bahorich*</u>
Justin M. Bahorich, Esq.
Pa. I.D. No. 329207
J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206
jbahorich@jpward.com

*Counsel for Plaintiff*